UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Clifford Henry, et al.,**

    *Plaintiffs*,

v.                                                          Case No. 3:19-cv-176
                                                                             Judge Thomas M. Rose

**Wal-Mart Stores East LP, et al.,**

    *Defendants*.

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF 27, AND TERMINATING CASE.**

Pending before the Court is Defendants' Wal-Mart Stores East LP and Wal-Mart Real Estate Business Trust Motion for Summary Judgment. ECF 27. Plaintiffs, Clifford and Sandra Henry claim Clifford Henry tripped and fell at a Wal-Mart store on a lump in a rubber floor mat, causing serious injuries.

**I.      Background**

On March 14, 2018, Plaintiffs visited the Wal-Mart store located in Vandalia, Ohio. (ECF 29-1, Henry Dep. at 35:4-35:12). Plaintiffs frequently visited this Wal-Mart, and, if the Henrys were going shopping, this was the store they would usually go to. Id. at 35-36, line 13-7, PageID 112. Shortly after checking out, Plaintiffs proceeded to exit the store. (Id., at 38:3-38:14). While on their way toward the exit, Plaintiffs walked past the customer service area, restrooms, and a nail salon. (Id., at 49:7-49: 11). Henry was looking straight ahead as he made his way

toward the exit. (Id., at 46:10-46:12). As Plaintiffs approached the ice machine near the nail salon, Henry tripped on a floor mat placed in front of the ice machine. (Id., at 48: 17-48:20). A Wal-Mart associate noticed that the end of the mat was folded under the mat, creating a hump. ("Q. Okay. So you're saying that you could see the rug right before he fell? A: "Yes, ma'am." Q: "And what did you see on the rug?" A: "The tip curled under with a little hump where someone had kicked the rug." ECF 29-2, PageID 175, ll. 15-20.)

Henry fell to the floor and sustained serious injuries, including injuries to his right shoulder and both elbows, as well as loss of consciousness and bodily functions. (Id., at 49:16-49:22). Henry did not observe the mat until after his fall. (Id., at 40:7-40:22; "And did you see anything that you believe caused you to fall?" A. The only thing that I seen was the mat on the floor that I can remember." ECF 26-1, PageID 113, 39:23-40:1)

There was no water on the floor in front of the ice machine. Id. at 45, line 22-23, PageID 114. Rather, Henry claims that he simply got "caught" on the mat as he was walking past the ice machine. Id. at 49, line 9-16, PageID 115. Henry knows that he tripped on a rubber mat because he saw the mat after his fall. Id. at 42, line 17-22, PageID 114. After he fell, Henry was caught on the mat as his wife was attempting to help him up. Id. 42, line 13-22, PageID 114. He had no problem seeing the mat in the photographs after the fall, and the photographs themselves demonstrate a large, black rubber mat on the brown store floor. Id. at 43, lines 9-14, PageID 114; see also ECF 26-1, PageID 132.

Just before Henry tripped over the floor mat, an employee of Wal-Mart, Deborah Jeffries was entering the store through the grocery side entrance when she observed a bump on the floor mat. (Jeffries Dep., ECF 29- 2, at 42:6-42:14; 44:2-44:8). Jeffries testified that she had

seen a bump on that same floor mat on previous occasions and that she has "straightened it out before." (Id., at 42:12-42:14). Jeffries explained that she and other Wal-Mart employees would frequently straighten out the floor mats in front of the two ice machines in the front of the store due to heavy traffic passing through that area. (Id., at 17:18-17:25). As an employee of Wal-Mart, Jeffries received training on trip and fall accidents. (Id., at 14:3-14:12). Specifically, Jeffries testified that she and other Wal-Mart employees were trained to look for curled rugs or floor mats. (Id., at 14:13-14:18).

Employees of Wal-Mart were trained to deal with tripping hazards "immediately." (ECF 29-3, Hill Dep. at 34:21-35:1). Employees of Wal-Mart are required to ensure that tripping hazards are dealt with and that the store is "safe for employees and customers." (Id., at 35:2-35:9). Employees of Wal-Mart are also required to conduct safety sweeps on an hourly basis at the top of each hour. *(Id.,* at 74:5-74: 18). Wal-Mart's policies and procedures further require employees to ensure that floor mats are clean, flat, and dry and to notify management so that floor mats that do not lie flat can be discarded or replaced. *(Id.,* at 89:10-89:21).

During the hour preceding the incident, the area near the ice machine and floor mat at issue experienced heavy traffic. (Wal-Mart Video at time stamp 06:25:55 PM - 07:26:45 PM). The video shows some customers walking directly over the floor mat *(Id.* at 06:34:44 PM; 06:34:58 PM; 06:41:34 PM; 06:42:20 PM; 06:42:35 PM; 06:43:47 PM; 06:47:23 PM; 06:49:13 PM; 06:53:13 PM; 06:53:33 PM; 06:53:48 PM; 06:54:12 PM; 06:54:58 PM; 06:56:03 PM; 06:57:02 PM; 06:58:45 PM- 06:58:53 PM; 06:59:10 PM; 07:02:30 PM; 07:02:46 PM; 07:07:07 PM; 07:07:56 PM; 07:12:11 PM; 07:17:56 PM; 07:19:24 PM; 07:21:18 PM; 07:21:37 PM

3

07:23:29 PM; 07:25:27 PM) while others actively avoid the floor mat *(Id.,* at 06:30:43; 06:31 :20 PM; 06:31 :56 PM; 06:32:24 PM; 06:32:35 PM; 06:33:28 PM; 06:33:39 PM; 06:34:58 PM; 06:35:04 PM; 06:35:47 PM; 06:36:44 PM; 06:41:14 PM; 06:41:29 PM; 06:42:04 PM; 06:42:33 PM; 06:45:05 PM; 06:46:55 PM; 06:48:13 PM; 06:50:10 PM; 06:53:05 PM; 06:54:14 PM; 06:55:26 PM; 06:57:36 PM; 06:59:36 PM- 06:59:42 PM; 06:59:53 PM; 07:02:14 PM; 07:03:47 PM; 07:04:16 PM; 07:04:46 PM; 07:06:39 PM; 07:07:43 PM; 07:08:10 PM; 07:10:25 PM; 07:10:37 PM; 07:11:10 PM; 07:12:20 PM; 07:14:01 PM; 07:16:02 PM; 07:16:10 PM; 07:22:24 PM; 07:24:58 PM). Another customer stumbled over the floor mat at issue less than ten minutes before Henry tripped. *(Id.,* at 07:17:05 PM).

In the Video, Henry approaches the floor mat with no defects visible from the location of the camera. (Id., at 07:26:22 PM - 07:26:41 PM). There does not appear to be an open and obvious danger associated with the floor mat at issue. (Id.). Nevertheless, Henry trips over the floor mat. *(Id.,* at 07:26:46).

Despite Wal-Mart's policy to conduct a safety sweep every hour, not a single employee was seen performing a required safety sweep of the area in front of the ice machine during the hour preceding Henry's fall. *(Id.,* at 06:25:55 PM - 07:26:45 PM).

On May 13, 2019, the Henrys sued Wal-Mart Stores East, LP and Wal-Mart Real Estate Business Trust in the Court of Common Pleas for Montgomery County, Ohio. ECF 3. Wal-Mart Stores East, LP is a Delaware limited partnership of which WSE Management, LLC is the general partner and WSE Investment, LLC is the limited partner. The principal place of business for these entities is Bentonville, Arkansas. Defendant Walmart Real Estate Business Trust is a Delaware real estate business trust, is an indirectly, wholly-owned subsidiary of Wal-Mart, Inc. The principal

place of business of Walmart Real Estate Business Trust is Bentonville, Arkansas. As Plaintiffs are residents of Ohio, Defendants removed to federal court. ECF 1.

Defendants filed a motion for summary judgment on all claims. ECF 27. Plaintiff filed a response. ECF 29. Defendants have replied, ECF 31, rendering the matter ripe for decision.

**II.     Standard**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set

y
z
w

forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

In addition to moving for summary judgment on Plaintiff's federal claim, Defendant is seeking summary judgment on Defendant's claim brought under Ohio law. In reviewing a claim under Ohio law, this Court must interpret Ohio law consistent with the interpretations of the

Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc*., 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co*., 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id*. (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co*., 27 F.3d 188, 191 (6th Cir. 1994)).

**III.    Analysis**

In a premises liability action under Ohio law, a plaintiff must show that "the defendant failed to exercise due care." *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 389, 92 N.E.2d 9 (1982). Proving this breach of a duty requires an affirmative demonstration from the evidence. *Wiedle v. Remmel*, 42 Ohio St.2d 335, 328 N.E.2d 391 (1975). In other words, to establish a genuine issue of material fact and survive a motion for summary judgment, a plaintiff has to be able to establish more than "the fact that a person slipped … on a floor," because that alone "is not sufficient to establish negligence." *Sterling v. Penn Traffic Co.*, 129 Ohio App.3d 809, 812, 719 N.E.2d 82 (10th Dist.1998). Property owners are not expected to be insurers of the safety of their invitees. *Paschal v. Rite Aid Pharmacy, Inc*., 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). Thus, store owners do not have a legal duty to protect an invitee against obvious dangers which the invitee can reasonably be expected to discover and protect against. *Simmers v. Bentley Constr. Co.,* 64 Ohio St. 3d 643, 644, 697 N.E.2d 504 (1992).

However, a shopkeeper does not owe invitees a duty to warn of any dangers on his property that are open and obvious. *Armstrong,* 99 Ohio St.3d 79 at ¶ 5. Therefore, the open and obvious

doctrine "acts as a complete bar to any negligence claims." *Id.* Courts have established that "the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). Under these circumstances, "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers,* 64 Ohio St.3d at 644. While "the dangerous condition at issue does not actually have to be observed by the plaintiff to be an 'open and obvious' condition under the law," it must be observable. *Boston v. A&B Sales, Inc.,* 7th Dist. Belmont No. 11 BE 2, 20 1 1-Ohio-6427, at ¶ 28 (Dec. 7, 2011). Furthermore, the question as to whether a condition is open and obvious generally is one that may be decided as a matter of law. *Goodson v. Millenium & Copthorne Hotels, PLC*, No. l:13-cv-502, 2015 U.S. Dist. LEXIS 797, at *12- 13 (S.D. Ohio, Jan. 6, 2015) (citing *Nageotte v. Cafaro Co.*, 8th Dist. Erie No. E-04-015, 160 Ohio App. 3d 702, 711, 828 N.E.2d 683 (6th Dist. App. 2005)).

The Ohio Supreme Court reaffirmed the open and obvious doctrine in *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088 (2003). The Court declared that where a danger is open and obvious, a storeowner owes no duty of care to patrons regarding that condition. Id. at syllabus. The function of the open and obvious doctrine is to relieve a landowner from the duty to guard against dangers "that are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself from them." *Paschal v. Rite Aid Pharmacy, Inc*., 18 Ohio St.3d 203, 480 N.E.2d 474 (1985).

Business owners do have a legal duty to protect against latent hazards, or those that are not discoverable by ordinary inspection. *Jung v. Davies*, Montgomery App. No. 24046, 2011-Ohio1134, at ¶ 40. Further, "[t]he issue is not whether an individual observes a condition, but

8

whether the condition is capable of being observed." Id., (citing *Lydic v. Lowe's Cos., Inc.*, Franklin App. No. 01AP-1432, 2002-Ohio-5001, ¶10).

The open and obvious doctrine "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong* at ¶ 13. In view of this, when a plaintiff is injured by an open and obvious danger, summary judgment is appropriate because the duty of care necessary to establish negligence does not exist as a matter of law. See *Armstrong* ¶ 14–15; see also *Bumgardner v. Wal-Mart Stores, Inc.*, 2d Dist. Montgomery No. 2002-CA-11, 2002 -Ohio- 6856, ¶ 14 (The open and obvious doctrine exists, relates to the duty prong of negligence, and acts as a bar to recovery); *Smith v. Kroger Co.*, 12th Dist. Butler No. CA2010–09–233, 2011 -Ohio- 1871, ¶ 14 (Where a hazard is not hidden from view or concealed and is discoverable by ordinary inspection, the court may properly sustain a summary judgment against the claimant).

In *Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM-08-018, 2009-Ohio-2934, a plaintiff tripped and fell on a rug in the entryway of an Ohio Turnpike rest stop restaurant. *Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM-08-018, 2009-Ohio-2934, ¶ 5. The plaintiffs asserted claims of negligence and loss of consortium, arguing that the restaurant's floor mat was defective. Id. at ¶ 6, 9. Specifically, the plaintiffs argued the rug was "molded" vertically upright at its edge and, therefore, posed a tripping hazard to customers. Id. The court affirmed summary judgment in favor of the defendant-restaurant based on the open and obvious doctrine. Id. ¶ 17. The court highlighted three important considerations. First, the mat was visible to customers. Id. at ¶ 17. The record contained no evidence indicating the mat was in a poorly lit area, and the mat was a different color than the tile so as to be clearly distinguished from the floor. Id. Second, the

9

record contained no evidence that the mat was defective. Id. ¶ 18. That the mat may have been "curled or bunched at the edge so as not to be perfectly flat," was not enough to prove the mat's defectiveness. Id. Last, the court noted that plaintiff admitted she was not looking down and watching where she was walking when her fall occurred. Id. at ¶ 17. Based on the above considerations, the court found the mat constituted an open and obvious condition and granted summary judgment in favor of the defendant-restaurant. Id. at ¶ 21.

The facts of the instant case are virtually identical to those in *Mostyn*. The mat was in a well-lit, unobstructed area and clearly visible to customers. Clifford was able to identify the mat in pictures at his deposition. ECF 26-1 Clifford Henry Depo. at 43, line 6-12, PageID 114; see also Exhibit 2, PageID 132. The pictures show that the area in which the floor mat sat was well-lit and unobstructed. See ECF 26-1, Clifford Henry Depo., Exhibit 2, PageID 132-33. Furthermore, Clifford noted the divergent color of the mat (black) and store floor (brown) in his deposition testimony when shown a photo of the scene of the incident. Id. at 43- 44, line 11-3, PageID 114. Clifford testified that he is not sure whether the mat was even folded prior to his fall or whether he, instead, caused the mat to fold with his fall. Id. at 44-45, line 22-18, PageID 114. Indeed, Clifford was not looking down at the time of his fall, rather he was looking straight ahead. Id. at 46, line 2-12, PageID 115 ("Q. If you had been looking down at the ground prior to your fall, would you have seen this mat? A. I really wasn't looking down, so I don't know how to answer that.").

Accordingly, here, as in *Mostyn*, clear visibility of the mat and testimony of Clifford stating he was not looking down, fulfills the threshold question concerning the existence of an open and obvious danger in Ohio (whether a danger is observable, rather than whether the danger was

actually observed). Wal-Mart had no duty to warn of an open and obvious hazard. A hazard does not actually have to be observed by the plaintiff prior to the fall to be an open and obvious hazard. Instead, the determinative issue is whether the hazard is observable. *Silbernagel v. Meijer Stores Ltd. Partnership*, 12th Dist. Butler No. CA2006-02-040, 2006-Ohio-5658, ¶ 10. The evidence and testimony of Clifford establishes that the mat was an open and obvious hazard. Thus, Wal-Mart cannot be liable in negligence because there was no duty for Wal-Mart to breach as it relates to the mat.

Customers in retail stores "are under a duty to use ordinary care so as to provide for their own safety, which includes a duty to look where they are walking." *Howard v. Wal-Mart Stores, Inc.*, 1996 WL 613664 (8th App. Dist. Oct. 24, 1996) (citing *Parsons v. Lawson*, 57 Ohio App.3d 49, 51 (5th App. Dist. 1989). While Plaintiff argues Defendant had constructive knowledge of a defect, this only initiates a duty to warn if the hazard is latent or concealed. *Jackson v. Kings Island*, 58 Ohio St. 2d 357, 358 (1979); *Perry v. Eastgreen Realty Co.*, 53 Ohio St. 2d 51 (1978); *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943).

## IV. Conclusion

Because the mat and any possible fold in it were open and obvious to Henry, had he looked, Wal-Mart is not liable to him under Ohio law for damages resulting from his fall. Thus, Defendants' Motion for Summary Judgment, ECF 27, is **GRANTED** and the instant case is **TERMINATED** on the docket of the United States District Court for the Southern District of Ohio at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, September 10, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE